**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00369-SBP

BRIAN KASSAL,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
CHARLES KUDLAUSKAS,
SARAH SCHRECONGOST, and
BETTY KASPAR,

Defendants.

---

**ORDER GRANTING MOTION TO COMPEL**

---

**Susan Prose, United States Magistrate Judge**

Before the court is Plaintiff's Motion to Compel (ECF No. 85), seeking an order directing nonparty Correctional Health Partners ("CHP") to comply with a subpoena served in July 2026. The court presides over this matter with the parties' consent. *See* 28 U.S.C. § 636(c)(1). Neither Defendants nor CHP have responded to the Motion, which was filed on August 18, 2026. The court **GRANTS** the Motion for the reasons below.

## BACKGROUND

A more fulsome recitation of the background to this case, derived from Plaintiff's Second Amended Complaint, can be found in the court's 2025 memorandum opinion and order on Defendants' partially successful motion to dismiss. (ECF No. 69 at 2-9.) A more abbreviated summary will suffice for present purposes. In February 2022, Plaintiff was an inmate in the

custody of Defendant Colorado Department of Corrections ("CDOC"). While participating in a work program, he fell off a roof and onto a concrete slab, sustaining serious injuries. He was first taken to a medical center in Salida, Colorado and then transferred to Colorado Territorial Correctional Facility ("CTCF") in Canon City. Ten days after the fall, he underwent surgery at Parkview Medical Center in Pueblo, where pins were inserted in his left ankle. Plaintiff was returned to CTCF the same day. Twelve days after his surgery, Plaintiff was taken back to Parkview for a follow-up appointment. Afterwards, he was transferred back to the Buena Vista Correctional Facility ("BVCF"), which is about two hours away from Parkview. It appears that Plaintiff's placement at BVCF contributed to a six-week delay in having the pins removed from his ankle. Following these events, Plaintiff was released on parole.

Plaintiff filed this lawsuit in early 2024. He contends, generally, that the individual Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and that their failure to provide prescribed follow-up care—including physical and occupational therapy, a CT scan, and timely removal of the pins—exacerbated his injuries. (ECF No. 53, ¶¶ 119-38.) He also contends that CDOC violated the Americans with Disabilities Act and Rehabilitation Act by denying him continued access to the work program. (*Id.* at ¶¶ 139-52.)

In July 2026, Plaintiff served CHP, an administrative services provider for CDOC, a subpoena seeking several categories of documents related to his medical treatment. (ECF No. 85-1.) These include all communications and communications logs pertaining to Plaintiff from February 2022 to the present between CHP and CDOC, and from February 2022 through the end of 2022 between CHP and CTCF, BVCF, and Parkview. (*Id.* at 4.) The subpoena also seeks all invoices, bills, and receipts related to Plaintiff from February 2022 to the present as well as

"[t]he written agreements or contracts between [CHP] and [CDOC]." (*Id.*)

CHP has not produced any documents in response to the subpoena. Nor has it taken any other relevant action, such as filing an objection or a motion to quash.

## LEGAL STANDARDS

The scope of permissible discovery is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which allows discovery regarding any nonprivileged matter that is both relevant to any party's claim or defense and proportional to the needs of the case. To determine the scope of appropriate discovery, courts consider "the importance of this issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*; *see Wang v. Alliance for Sustainable Energy, LLC*, No. 20-cv-03780-NYW, 2022 WL 1500779, at *2 (D. Colo. May 12, 2022).

The use of subpoenas for discovery is governed by Rule 45, which allows a party to subpoena a nonparty to obtain documents within its possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). To determine whether a nonparty should be compelled to produce information in a case, courts consider "the burden on the nonparty, relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Wang*, 2022 WL 1500779, at *2 (quotation omitted).

## ANALYSIS

Although Plaintiff's Motion is unopposed and CHP appears to have waived any objection to the subpoena, the court still has an independent obligation to determine whether the proposed discovery is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P.

26(b)(2)(C)(iii); *see Wang*, 2022 WL 1500779, at *3. With one minor exception, the court has little trouble finding both requirements are satisfied here.

First, the information related to Plaintiff's medical treatment is clearly relevant to Plaintiff's claims that the individual Defendants were deliberately indifferent to his serious medical needs. The communications sought are likely to provide insight into certain decisions about Plaintiff's medical care, including who made them and how, when, and why they were made.

Second, the subpoena does not strike the court as overly broad. For the most part, Plaintiff requests communications within relevant timeframes that are directly about him. Under the circumstances, this does not appear to be an overly burdensome amount of documentation to produce in a case such as this one. The court discerns no reason why CHP, in its capacity as an administrative provider for CDOC, would have substantial difficulty complying with this appropriately tailored request for communications that are clearly relevant. The court notes as well that Plaintiff has provided a signed medical release with his subpoena. (ECF No. 85-1 at 8-9.)

Plaintiff's request for written agreements or contracts between CHP and CDOC stands on a different footing, however, as it is neither cabined by date nor focused on Plaintiff's specific circumstances. Moreover, depending on the level of interaction between CHP and CDOC and the duration of those interactions, it is foreseeable that there may be many agreements between them that have nothing to do with the circumstances of this case, that such agreements could be voluminous, and that some of them were not in effect during the relevant time frame. Accordingly, the court will circumscribe this portion of the subpoena and require CHP to

produce only general agreements directly related to the provision of medical care that were in effect from February 2022 through the end of 2022.

Finally, to the extent the discovery Plaintiff seeks can be obtained from other sources, the court finds that seeking discovery from each of the other entities involved in Plaintiff's medical treatment, rather than the centralized administrator, would likely be less convenient, more burdensome, and more expensive. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Wang*, 2022 WL 1500779, at *6.

**CONCLUSION**

Therefore, the Motion to Compel (ECF No. 85) is respectfully **GRANTED in part**. CHP is ORDERED to produce the communications documents requested in paragraphs 1 through 4 of the subpoena and the billing documents requested in paragraph 5. With respect to paragraph 6, CHP is ORDERED to produce only the agreements described above regarding CHP's administrative services that were in effect from February 2022 through the end of 2022.

DATED: November 20, 2026

BY THE COURT:

Susan Prose
United States Magistrate Judge